UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) ) Plaintiff, ) ) v. ) ) RICHARD G. CODY, individually and doing ) business as BOSTON INVESTMENT ) PARTNERS, LLC, and BOSTON ) INVESTMENT PARTNERS, LLC, ) ) Defendants. ) ) | Civil Action No. 16-cv-12510 |

**MEMORANDUM AND ORDER
ON MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a civil enforcement action brought by the Securities and Exchange Commission against Richard G. Cody and a limited liability company through which he did business, Boston Investment Partners, LLC. The complaint alleges that Cody, an investment adviser, lied to several clients about their retirement accounts and then undertook a variety of deceptive and fraudulent acts to hide his misconduct. It further alleges that Cody violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 340.10b-5; and §§ 206(1)-(2) of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6(1)-(2).

The SEC has moved for summary judgment in its favor. For the following reasons, the motion will be granted.

I.  **Background**

   A.  **Factual Background**

Richard G. Cody was an investment adviser and/or broker representative at all times relevant to the following events. (Indict. ¶ 1-2). Boston Investment Partners, LLC was a limited liability company through which Cody conducted some of his business. (*Id.* ¶ 3).

From 1998 through September 2016, Cody worked as an investment adviser at a variety of different firms. (Rule 11 Hearing, 17-cr-10291 Dkt. #102, 13:19-14:1). In that capacity, he managed the retirement accounts for numerous individuals, which included investing, reporting, and disbursing client funds. (*Id.* 14:2-11).

Maureen and Paul M., Kenneth E., and Carol and Ray B. were clients of Cody from May 2005 to September 2016. (*Id.* 14:2-8). Each of those sets of clients involved at least one person who, after a long career at Verizon, retired, and elected to receive their pensions as lump sums. (*Id.*). Those funds were then entrusted to Cody for investment. (*Id.*).

In his dealings with each of those clients, Cody "willfully engaged in transactions, practices, and courses of business that were fraudulent, deceptive, and manipulative." (*Id.* 14:12-18). In essence, he falsely assured the victims that any account balances remained high and that their distributions came from interest income. (*Id.* 14:16-18). In fact, the accounts suffered significant losses, especially in 2008, and the value of the accounts was steadily declining. (*Id.* at 14:15-21).

Cody hid that fact from his victims. On one occasion, for example, Kenneth E. called Cody after reviewing a brokerage-firm statement indicating that his account had declined in value. (*Id.* 14:22-25). Rather than tell the truth, Cody falsely told him that he had additional funds invested elsewhere in bonds, and that the statement did not reflect the full value of his

accounts. (*Id.*).

Cody also created false documents to conceal his deception from his victims. In April 2016, Maureen M. told him that she needed to borrow $10,000 from her retirement account. (*Id.* 15:2-5). At that point, her accounts were basically empty. (*Id.*). Cody nonetheless told her that her money was in an annuity with Sun Life and proceeded to create a falsified Sun Life annuity form with various false details handwritten on the form. (*Id.* 15:5-10). That same year, he sent both Maureen M. and Kenneth E. falsified IRS Form 1099, reflecting about $30,000 in distributions. (*Id.* 15:11-18). Both individuals, however, had retirement accounts that were empty, or nearly so, during this time. (*Id.* 15:11-22).

In January 2013, Cody was suspended from associating with any FINRA member firm a one-year period. (*Id.* 15:23-25). He also concealed that fact from his victims. He covertly transferred his accounts to his wife, Jill Cody, by submitting documents with forged signatures. (*Id.* 15:25-16:2). His victims were never told of the suspension.

Beginning in 2014, the retirement savings of Maureen M. and Kenneth E. were fully depleted. Cody nonetheless paid the monthly payments that they expected to receive from his own accounts. Because of that, neither victim was alerted as to the depleted status of their account. (*Id.* 16:3-8).

Eventually, the deception was discovered. Cody was indicted for, and eventually pleaded guilty to, securities fraud.

### B. <u>Procedural History</u>

The SEC filed this action on December 12, 2016. On October 2, 2017, the United States filed a motion to intervene and to stay discovery pending completion of the criminal case. The Court granted the motion to intervene and stay on October 26, 2017.

The criminal case against Cody charged one count of fraud under the Investment Advisers Act, 15 U.S.C. §§ 80b-6; 80b-17, and two counts of making a false declaration under oath, 8 U.S.C. § 1623(a). On November 9, 2018, he pleaded guilty to all three counts in the indictment. On July 25, 2019, the Court issued an order lifting the stay in this case.

The SEC has moved for summary judgment on its claims for violations of § 206(2) of the Investment Advisers Act, § 10(b) of the Exchange Act of 1934, and Rule 10(b)-5.

## II.     Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

4

**III.     Analysis**

    **A.     Liability**

The complaint alleges that Cody violated (1) § 206(1)-(2) of the Investment Advisers Act, 15 U.S.C. §§ 80b-6(1)-(2); and (2) § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  The SEC seeks summary judgment as to both claims.

        **1.     Issue Preclusion**

The SEC's motion is largely predicated on issue preclusion.  Issue preclusion, also known as collateral estoppel, "bars parties from re-litigating issues of either fact or law that were adjudicated in an earlier proceeding." *Robb Evans & Associates, LLC v. United States*, 850 F.3d 24, 31 (1st Cir. 2017).  "[T]here are four prerequisites to the application of [issue preclusion]. The party seeking preclusion must show that '(1) both proceedings involve[] the same issue of law or fact, (2) the parties actually litigated that issue [in the prior proceeding], (3) the prior court decided that issue in a final judgment, and (4) resolution of that issue was essential to judgment on the merits.'" *Id.* at 32 (quoting *Global NAPs, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 95 (1st Cir. 2010)).

"It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951) (citing *United States v. Greater New York Live Poultry Chamber of Commerce*, 53 F.2d 518 (S.D.N.Y. 1931)).  Thus, multiple courts have given preclusive effect to prior criminal convictions in later civil proceedings.  *See Fontneau v. United States*, 654 F.2d 8, 9-10 (1st Cir. 1981); *see also Anderson v. C.I.R.*, 698 F.3d 160, 164-65 (3d Cir. 2012); *Kariuki v. Tarango*, 709 F.3d 495, 506-08 (5th Cir. 2013); *United States v. $448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992); *United States v. Wight*, 839 F.2d 193, 195-97

(4th Cir. 1987). *But see* Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 4474.1 (2d ed. 2019) (disagreeing with federal courts that have applied issue preclusion to guilty pleas); *Id.* at n.32 (citing courts that have rejected or limited the practice).

### 2. Section 206(2) of the Investment Advisers Act

Cody pleaded guilty to a willful violation of § 206(2). In so doing, he explicitly admitted to a crime with the following elements: (1) being an investment adviser; (2) engaging in a transaction practice or course of business, which operated as a fraud and deceit upon investment advisory clients or engaging in an act, practice and course of business that was fraudulent, deceptive, or manipulative; (3) engaging in such transaction knowingly, willfully, and with intent to defraud; (4) engaging in such alleged transaction, practice, or course of business by use of mails or instrumentality of interstate commerce. 15 U.S.C. § 80b-6; 15 U.S.C. § 80b-17; *see also United States v. Tagliaferri*, 820 F.3d 568, 572 (2d Cir. 2016) (affirming lower court's application of scienter element as imposed by 15 U.S.C. § 80b-17).

The necessary elements for civil liability under § 206(2) are nearly identical. The SEC must establish that Cody (1) while acting as an investment adviser, (2) engaged in an act, transaction, practice or course of business that operated as a fraud or deceit upon any client, (3) with scienter or acting negligently, (4) by use of mails or an instrumentality of interstate commerce. 15 U.S.C. § 80b-6(2). Although the *mens rea* requirement for civil liability is not precisely identical to its criminal counterpart, it is well-established that acting with scienter or a willful state of mind satisfies the lesser requirement of a negligent state of mind. *See S.E.C. v. Ficken*, 546 F.3d 45, 52 (1st Cir. 2008).

Cody thus pleaded guilty to every element (or its equivalent) necessary to find civil liability. He is therefore precluded from disputing any necessary element, and summary

6

judgment is appropriate on that claim.

### 3. § 10(b) of the Exchange Act and Rule 10b-5(c)

Cody's guilty plea, in conjunction with undisputed evidence, also precludes him from contesting the SEC's claim under § 10(b) and Rule 10b-5(c) of the Exchange Act. Under § 10(b) of the Exchange Act, it is unlawful for any person, "by the use of any means or instrumentality of interstate commerce or the mails," "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." 15 U.S.C. § 78j(b). Rule 10b-5(c) makes it unlawful "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b-5(c). Taken together, to establish a violation of § 10(b) and Rule 10b-5(c), the SEC must show that Cody (1) in connection with the purchase or sale of a security, (2) engaged in an act, practice, or course of business that operated as a fraud or deceit upon any person, (3) with scienter, and (4) by use of the mails or any means or instrumentality of interstate commerce. *Id.*; 15 U.S.C § 78j(b); *see also S.E.C. v. Fife*, 311 F.3d 1, 9-10 (1st Cir. 2002).[1]

Cody's guilty plea to violating § 206(2) of the Investment Advisers Act covers all but one of those elements. He pleaded guilty to engaging in the necessary deceitful or fraudulent act, practice, or course of conduct, with the necessary scienter, by means of interstate commerce. (Rule 11 Hearing 12:11-23). The only element not preclusively established by his guilty plea is

---

[1] In criminal cases brought under those provisions, the government must prove that defendant acted willfully or with "culpable intent." *United States v. Bray*, 853 F.3d 18, 27 (1st Cir. 2017). In civil proceedings, the SEC must prove that the defendant acted with scienter, which includes a conscious intent to defraud or acting with "a high degree of recklessness." *S.E.C. v. Fife*, 311 F.3d 1, 9 (1st Cir. 2002).

the requirement that the fraudulent acts occur in connection with the purchase or sale of a security.

This final element has nonetheless been established by uncontroverted evidence. The evidence and sworn testimony indicates that Cody bought and sold securities in the accounts of all three victims from at least 2003 through at least 2014, and that the fraudulent acts were employed in connection with the purchase or sale of a security. (SMF ¶ 27; *see also* Sept. 19, 2019 McCann Dec. ¶ 5; Dec. 6, 2016 McCann Dec. ¶ 6). That unrefuted evidence establishes the final necessary element for the claim under § 10(b) and Rule 10b-5(c).

Summary judgment is therefore appropriate as to both claims.

**B.** **Remedies**

The SEC seeks two separate remedies in its motion: a permanent injunction and disgorgement.

**1.** **Permanent Injunction**

First, the SEC seeks entry of a permanent injunction against Cody pursuant to § 209 of the Advisers Act, 15 U.S.C. § 80b-9, and § 21(d)(1) of the Securities Exchange Act, 15 U.S.C. § 78u(d)(1). Both statutes permit the issuing of permanent injunctions to prevent ongoing or future violations.

The First Circuit "has upheld issuance of injunctions [under § 78] in cases where future violations were likely." *S.E.C. v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003). To assess the likelihood of future violations, courts must consider, among other things, "the nature of the violation, including its egregiousness and its isolated or repeated nature, as well as whether the defendants will, owing to their occupation, be in a position to violate again." *Id.*

Cody is sufficiently likely to commit future violations to warrant an injunction under the

statutes. Although it is true that he is currently imprisoned, and thus not immediately in a position to commit further violations, the duration and egregiousness of his scheme—in particular, the fact that he made multiple misrepresentations over a prolonged period of time and created falsified documents to hide his deceptions—warrants the issuance of an injunction. He also pleaded guilty to two counts of making false declarations under oath in the course of investigations into his conduct. That course of conduct suggests a willingness to commit additional crimes to protect himself and a disregard for the seriousness of his actions, further counseling in favor of a permanent injunction.

The SEC has not requested a specific form of injunction. Accordingly, the Court will simply track the statutory language of § 209 of the Advisers Act and § 21(d)(1) of the Exchange Act.

### 2. Disgorgement and Prejudgment Interest

The SEC also seeks an order requiring Cody to pay disgorgement in the amount of $14,171 and prejudgment interest on the disgorgement in the amount of $3,490.

A court that has found federal securities law violations "has broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996). "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *Id.*

A district court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *Id.* at 1474-75. "The amount of disgorgement ordered 'need only be a reasonable approximation of profits causally connected to the violation." *Id.* at 1475 (quoting *S.E.C. v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995)). The

9

remedy is limited to ill-gotten gains dating from no more than five years back from the filing of the Commission's civil action. *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1645 (2017).

The SEC requests disgorgement in the amount of $14,171. That amount was calculated as the total fees Cody earned from managing accounts for the three victims from the period of December 12, 2011, through the filing of the complaint in this action. (Sept. 19, 2019 McCann Dec., ¶ 7). Because the victims were, at least in part, retained as clients by means of the very deception for which Cody is liable here, disgorgement of the fees he earned from their accounts is a fair approximation of the ill-gotten gains he received from his deception.

The SEC also seeks an order requiring Cody to pay $3,490 in prejudgment interest on the disgorgement amount of $14,171. "An award of pre-judgment interest in a case involving violations of the federal securities laws rests within the equitable discretion of the district court to be exercised according to considerations of fairness." *S.E.C. v. Tome*, 638 F. Supp. 638 (S.D.N.Y. 1986). Although the First Circuit has "found no case holding that an award of disgorgement must always be accompanied by an award of prejudgment interest," it has recognized that "many courts that order disgorgement routinely also order payment of prejudgment interest." *Sargent*, 329 F.3d at 41, n.1 (internal quotations omitted). "[A]n assessment of prejudgment interest, like the disgorgement remedy, is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *Id.* at 40 (quotations omitted). That is because if a court does not order prejudgment interest, a defendant who has violated securities law receives an "interest-free loan" on the profits he has made through his fraud. *Id.* at 41. "Prejudgment interest rates are commonly calculated using the rate applied by the Internal Revenue Service to calculate underpayment penalties." *S.E.C. v. Spencer Pharmaceutical Inc.*, 2015 WL 5749436 at *7 (D. Mass. 2015) (citing I.R.C. §

6621(a)(2); *S.E.C. v. Druffner*, 517 F. Supp. 2d 502, 512 (D. Mass. 2007). Here, that amount is $3,490. (*See* Sept. 19, 2019 McCann Dec., ¶ 8).

Accordingly, Cody will be ordered to pay disgorgement in the amount of $14,171, plus prejudgment interest in the amount of $3,490.

## IV. Conclusion

For the foregoing reasons, the motion of plaintiff Securities and Exchange Commission for summary judgment is GRANTED. Defendants Richard G. Cody and Boston Investment Partners, LLC, are hereby ENJOINED from committing any act or practice in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 340.10b-5; and §§ 206(1)-(2) of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-6(1)-(2), and from aiding, abetting, counseling, commanding, inducing, or procuring any such act or practice. Defendant Richard G. Cody is hereby ORDERED to disgorge the amount of $14,171, plus prejudgment interest in the amount of $3,490, to the United States Securities and Exchange Commission.

**So Ordered.**

Dated: December 5, 2019

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge